# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

GUN OWNERS OF AMERICA, et al.,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Michigan

---

## BRIEF FOR APPELLEES

---

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

SAIMA SHAFIQ MOHSIN
  *Acting United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
COURTNEY L. DIXON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7243*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 353-8189*

*Of Counsel:*
MELISSA ANDERSON
  *Associate Chief Counsel (Litigation)*
  *Bureau of Alcohol, Tobacco, Firearms, &*
    *Explosives*
  *99 New York Avenue NE*
  *Washington, DC 20226*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ...................................................................................1

STATEMENT OF THE ISSUE...........................................................................................1

STATEMENT OF THE CASE.............................................................................................2

      A.      Federal Firearms Laws ..............................................................................2

      B.      Michigan's State Firearms Permitting Laws..............................................5

      C.      Prior Proceedings......................................................................................9

SUMMARY OF ARGUMENT:..........................................................................................11

STANDARD OF REVIEW ................................................................................................13

ARGUMENT:
      ATF Correctly Determined That Michigan Concealed Pistol Licenses
      No Longer Qualify As Alternatives Under § 922(t)(3) ..........................................13

A.      ATF's Decision Comports with the Text of § 922(t)(3) and
      Traditional Principles of Federalism.........................................................14

B.      Plaintiffs' Contrary Arguments Are Not Persuasive ...............................19

CONCLUSION ...................................................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**  **Page(s)**

*Abramski v. United States,*
573 U.S. 169 (2014)...........................................................................................25

*Kentucky Waterways All. v. Johnson,*
540 F.3d 466 (6th Cir. 2008) ...........................................................................13

*Morgan v. ATF,*
509 F.3d 273 (6th Cir. 2007) ........................................ 12, 13, 14, 16, 17, 21, 22, 23, 24

*National Rifle Ass'n of Am. v. Reno,*
216 F.3d 122 (D.C. Cir. 2000) .........................................................................18

*Puckett v. Lexington-Fayette Urban Cty. Gov't,*
566 F. App'x 462 (6th Cir. 2014) ....................................................................24

*Skidmore v. Swift & Co.,*
323 U.S. 134 (1944) ..........................................................................................19

*Varsity Brands, Inc. v. Star Athletica, LLC,*
799 F.3d 468 (6th Cir. 2015) ...........................................................................19

**Statutes:**

Administrative Procedure Act:
5 U.S.C. § 706 ...................................................................................................10
5 U.S.C. § 706(2)(A)..........................................................................................13

Brady Handgun Violence Prevention Act,
Pub. L. No. 103-159, 107 Stat. 1536 (1993) .....................................................2

Gun Control Act of 1968,
Pub. L. No. 90-618, 82 Stat. 1213......................................................................2
18 U.S.C. § 921(a)(33)(A) .................................................................................7
18 U.S.C. § 921(a)(33)(B)..................................................................................7
18 U.S.C. § 922(d)........................................................................................ 2, 21
18 U.S.C. § 922(g) ....................................................................................... 2, 21
18 U.S.C. § 922(g)(9) ............................................................................ 7, 12, 18, 20

18 U.S.C. § 922(t) ..................................................................................................20
18 U.S.C. § 922(t)(1) ....................................................................................... 3, 18
18 U.S.C. § 922(t)(2) ................................................................................................3
18 U.S.C. § 922(t)(3) .............................................................................4, 9, 11, 12
18 U.S.C. § 922(t)(3)(A)(ii) .......................................................................1, 4, 14, 18
18 U.S.C. § 923 ........................................................................................................2
18 U.S.C. § 923(d)(1)(F) .......................................................................................16

28 U.S.C. § 1291 .....................................................................................................1

28 U.S.C. § 1331 .....................................................................................................1

Mich. Comp. Laws § 28.422(3) ...............................................................................5

Mich. Comp. Laws § 28.425(1)(a) ...........................................................................5

Mich. Comp. Laws § 28.426(1) ...............................................................................5

Mich. Comp. Laws § 28.426(2)(a) ...........................................................................6

## Regulations:

National Instant Criminal Background Check System,
28 C.F.R. § 25.1 *et seq.* ....................................................................................3
28 C.F.R. § 25.2 ...............................................................................................3
28 C.F.R. § 25.3 ...............................................................................................3
28 C.F.R. § 25.6(c)(1)(iii) .................................................................................3
28 C.F.R. § 25.6(c)(1)(iv) .............................................................................. 3, 4
28 C.F.R. § 25.6(f)(2) ......................................................................................3
28 C.F.R. § 25.7(a) ..........................................................................................3

27 C.F.R. § 478.102(c) ...................................................................................... 5, 15

27 C.F.R. § 478.124(c)(1) .......................................................................................3

## Legislative Materials:

H.R. Rep. No. 103-344 (1993), *reprinted in*
1993 U.S.C.C.A.N. 1984................................................................................ 2, 18

S. Rep. No. 89-1866 (1966)) ....................................................................................2

**Other Authorities:**

ATF, *Permanent Brady Permit Chart* (last updated Mar. 23, 2020),
https://go.usa.gov/xHWkd ........................................................................ 5, 9

63 Fed. Reg. 8379 (Feb. 19, 1998) ................................................................ 4, 5, 15

63 Fed. Reg. 58,272 (Oct. 29, 1998) ............................................................ 4-5, 15

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. The district court granted summary judgment in favor of defendants on December 17, 2020. Order, R. 25, PageID#571. Plaintiffs filed a timely notice of appeal on February 8, 2021. Notice of Appeal, R. 27, PageID#573. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Federal law generally requires licensed firearms dealers to contact the federal background check system prior to transferring a firearm. In some circumstances, a state firearms permit can serve as an alternative to a federal background check, but only if "the law of the State provides that" the "permit is to be issued only after" state officials have "verified" that available information "does not indicate that possession of a firearm by" the applicant would be unlawful. 18 U.S.C. § 922(t)(3)(A)(ii). In 2019, Michigan officials informed the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that they do not interpret Michigan's background check requirement for concealed pistol licenses to require the Michigan State Police to determine whether applicants are prohibited from possessing a firearm under all federal prohibitions.

The question presented is whether ATF reasonably concluded, based on the interpretation of Michigan law it was provided by Michigan officials, that Michigan

concealed pistol licenses do not qualify under § 922(t)(3) as valid alternatives to a federal background check.

## STATEMENT OF THE CASE

### A. Federal Firearms Laws

1. Congress enacted the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, to "regulate more effectively interstate commerce in firearms" in order to "reduce the likelihood that [firearms] fall into the hands of the lawless or those who might misuse them." *See* S. Rep. No. 89-1866, at 1 (1966). Among its provisions, the Gun Control Act limits the sale of firearms to federally licensed dealers, manufacturers, and importers, *see* 18 U.S.C. § 923, and designates several categories of persons for whom it is unlawful to "receive" or "possess" "any firearm," including those convicted of felonies, fugitives from justice, and those who have been convicted of a misdemeanor crime of domestic violence, *id.* § 922(g). It is similarly unlawful to knowingly sell or transfer a firearm to such persons. *Id.* § 922(d).

2. In 1993, Congress passed the Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993) (Brady Act), after finding that prohibited persons continued to have "relatively easy access to guns," *see* H.R. Rep. No. 103-344, at 9 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1984, 1986. Congress observed that "[t]he majority of States" did not require background checks to purchase firearms, a "crucial tool for ensuring that laws prohibiting the sale of handguns to criminals are observed." *Id.* at 10, 1993 U.S.C.C.A.N. at 1987.

2

To combat this problem, the Brady Act directed the Attorney General to establish and operate a national background check system for licensed firearms dealers to contact before transferring firearms to potential purchasers. *See* 18 U.S.C. § 922(t)(1), (2). Pursuant to this mandate, the Attorney General established the National Instant Criminal Background Check System (NICS), *see* 28 C.F.R. § 25.1 *et seq.*, which is administered by the Federal Bureau of Investigation (FBI), *see id.* § 25.3.

Before transferring a firearm to a prospective purchaser, a licensed dealer must submit certain identifying information about the purchaser to the NICS. *See* 28 C.F.R. § 25.7(a); 27 C.F.R. § 478.124(c)(1). The NICS performs a background check by comparing this identifying information against three separate databases. *See* 28 C.F.R. §§ 25.2, 25.6(c)(1)(iii), (f)(2). If a background check reveals no record indicating that the prospective purchaser is a prohibited person, the NICS indicates to the licensed dealer that it may proceed with the sale. *Id.* § 25.6(c)(1)(iv). If the prospective purchaser's identifying information matches a record contained in one of the databases, and the record establishes that the person is prohibited from possessing a firearm, the NICS indicates to the licensed dealer that it must deny the sale. *Id.* If the prospective purchaser's identifying information matches a record contained in one of the databases, but the record is not clear if the person is prohibited, the NICS indicates to the licensed dealer that it must delay the sale. *Id.* A NICS examiner then reviews the matching records and obtains additional information, when necessary, to determine if the prospective purchaser is prohibited from possessing firearms. *Id.*; *see*

3

Administrative Record (AR), R. 16-3, PageID#273. If the NICS determines that the purchaser is not a prohibited person, or if the NICS does not follow up with the licensed dealer within three business days of the instruction to delay, the dealer may proceed with the firearm sale. 28 C.F.R. § 25.6(c)(1)(iv). If the NICS determines that the purchaser is a prohibited person, it directs the licensed dealer to deny the sale. *Id.*

3. In some circumstances, a state firearms permit can serve as an alternative on which a licensed dealer may rely, instead of carrying out a background check through the NICS. *See* 18 U.S.C. § 922(t)(3). Under the Brady Act, a federal firearm licensee is not required to contact the NICS for a background check where a person presents a state firearms permit issued within the past 5 years, and "the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by [the] person would be in violation of law." *Id.* § 922(t)(3)(A)(ii).

Since the Brady Act's enactment, ATF has explained that the "information available" to state government officials within the meaning of § 922(t)(3) includes the information available in the NICS databases, and that for a state permit to serve as a valid alternative, the state's law must require officials to "verif[y]" "that possession of a firearm by the permittee would not be in violation of Federal" law as well as state and local law. *See* 63 Fed. Reg. 8379, 8381 (Feb. 19, 1998); 63 Fed. Reg. 58,272, 58,272 (Oct. 29, 1998); *see also* 27 C.F.R. § 478.102(c). "If a State does not disqualify

4

all individuals prohibited under Federal law" from possessing a firearm, "the permits issued by that State w[ill] not be accepted as alternatives" to a background check through the NICS.  *See* 63 Fed. Reg. at 8381.

ATF issues notices to federal firearms licensees with respect to which state permits qualify as alternatives under § 922(t)(3), *see, e.g.*, AR, R. 16-1, PageID#187; and ATF maintains a list of qualifying state permits, *see* ATF, *Permanent Brady Permit Chart* (last updated Mar. 23, 2020), https://go.usa.gov/xHWkd.

**B.      Michigan's State Firearms Permitting Laws**

1.  Michigan law provides for two types of firearms permits.  First, Michigan authorizes local police to issue "licenses to purchase, carry, possess, or transport pistols."  Mich. Comp. Laws (MCL) § 28.422(3) (licenses to purchase); *see id.* § 28.426(1).  Michigan licenses to purchase have been continuously recognized by ATF as a valid alternative to a background check through the NICS since 1998, *see* AR, R. 16-1, PageID#88, and for reasons explained below, they are not at issue here.

Michigan law also provides for "concealed pistol license[s]."  MCL § 28.425(1)(a).  Among other requirements, in order to receive a Michigan concealed pistol license, "[t]he department of state police, or the county sheriff," must "determine[] through the federal national instant criminal background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm."  *Id.* § 28.426(2)(a).

Michigan enacted this background check requirement for its concealed pistol licenses in November 2005.  *See* AR, R. 16-1, PageID#91.  In 2006, the Michigan Attorney General wrote a letter to ATF requesting that ATF determine, for the first time, that Michigan concealed pistol licenses qualify as a valid alternative to a NICS check.  *See id.* at PageID#143.  Based on information conveyed to ATF by the Michigan Attorney General, ATF understood that "the issuance process" for Michigan concealed pistol licenses would require "[a] full NICS check be[] conducted by an authorized Michigan government official"; "[a] determination made by that official that the permit holder is not prohibited under federal or state law from possessing firearms"; and that "[t]he permit be[] denied if the individual is prohibited from possessing a firearm under federal (or state) law." *Id.*  On this understanding, ATF advised federal firearm licensees in 2006 that Michigan concealed pistol licenses issued after November 2005 would qualify as valid alternatives under § 922(t)(3) to a background check through the NICS.  *See id.* at PageID#91.

2.  In 2017, the federal government learned that Michigan had revised its interpretation of the background check required under Michigan law for the issuance of concealed pistol licenses.  *See* AR, R. 16-1, PageID#144, 191.  ATF was informed by Michigan officials that the Michigan State Police—the authority responsible in Michigan for conducting background checks for concealed pistol licenses—was required to "access[]" the information in the NICS databases, but was not required to conduct further "research" based on the information returned or to make "final

determination[s]" as to whether applicants for concealed pistol licenses were prohibited from obtaining firearms under certain federal prohibitions "for which there is" no State law "equivalent," such as the federal prohibition for misdemeanor crimes of domestic violence, 18 U.S.C. § 922(g)(9).[1]  *See* AR, R. 16-1, PageID#144, 191.

The federal government discussed the matter with Michigan officials, and "offered to provide training" and "guidance" to assist the Michigan State Police in making determinations as to whether applicants were prohibited under federal law from possessing a firearm.  *See* AR, R. 16-1, PageID#191.  Initially, it appeared from these discussions that Michigan would maintain its prior interpretation of its background check requirements.  The Michigan State Police informed ATF in July 2018 that it had "received an informal opinion" from the Michigan Attorney General "recommending that the [Michigan State Police] make and enter determinations of federal firearms prohibitions," including with respect to convictions for misdemeanor crimes of domestic violence.  *See id.* at PageID#104.

---

[1] Federal firearms law defines a "misdemeanor crime of domestic violence" as an offense that "is a misdemeanor under Federal, State, or Tribal law," and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by" a person sharing specified domestic relationships with the victim.  *See* 18 U.S.C. § 921(a)(33)(A).  A person is not disqualified from possessing a firearm for committing such an offense unless "the person was represented by counsel" "or knowingly and intelligently waived the right to counsel"; and, if the offense was one for which the person was entitled to a jury trial, if "the case was tried by a jury" or "the person knowingly and intelligently waived the right to have the case tried by a jury."  *Id.* § 921(a)(33)(B).

In 2019, however, after a new Michigan Attorney General was elected, ATF was again informed that, in the view of Michigan officials, the Michigan State Police is not required to conduct further research and make final determinations as to whether applicants for Michigan concealed pistol licenses are prohibited from possessing a firearm under the federal prohibition for misdemeanor crime of domestic violence convictions. *See* AR, R. 16-1, PageID#111; *id.* at PageID#105 (noting "changes in law and state government"). The Michigan State Police informed ATF that it was following guidance from its "legal counsel," who was communicating with the Michigan Attorney General's Office. *Id.* at PageID#113; *see also, e.g., id.* at PageID#105, 111. ATF learned that, as a result of this changed interpretation, "at least 50" concealed pistol licenses "had been approved for issuance to applicants who appeared to be federally prohibited due to a conviction for a misdemeanor crime of domestic violence." *Id.* at PageID#145; *see id.* at PageID#115. Michigan officials informed ATF that this interpretation was not being applied to the background check requirement for Michigan licenses to purchase firearms, which are administered by local police departments. *See id.* at PageID#118.

ATF attempted to meet with the Michigan Attorney General's Office to discuss the matter, but ATF was informed that the Michigan Attorney General's Office was not interested in a meeting. *See* AR, R. 16-1, PageID#145; *id.* at PageID#104-105.

3. Because Michigan officials no longer interpret their background check requirement to require the Michigan State Police to "verif[y]" whether available

8

information "indicates" that concealed pistol license applicants are prohibited from possessing a firearm under federal law, 18 U.S.C. § 922(t)(3), ATF in March 2020 issued a public safety advisory to all federal firearms licensees informing them that Michigan concealed pistol licenses no longer qualify under § 922(t)(3) as valid alternatives to a federal background check. *See* AR, R. 16-1, PageID#187-188.

ATF also sent a letter to the Michigan Attorney General notifying her of its decision. *See* AR, R. 16-1, PageID#190. ATF explained that, if Michigan wishes for its concealed pistol licenses to again qualify as valid alternatives under § 922(t)(3), Michigan would need to ensure that those licenses are issued only after State officials perform "the necessary research" and "determine[]" whether applicants are prohibited by federal law from possessing a firearm. *See id.* at PageID#192. And if Michigan wishes for licenses "previously issued" without such a check to qualify, Michigan would need to re-check those applicants and "revoke[]" any licenses found to be issued to prohibited persons. *Id.*

4. Because Michigan did not change its interpretation of the background check requirement for Michigan licenses to purchase firearms, ATF has continued to recognize those licenses as valid alternatives under § 922(t)(3). *See Permanent Brady Chart*, *supra* (listing Michigan "Licenses to Purchase a Pistol" as a valid alternative).

## C.    Prior Proceedings

Plaintiffs are a non-profit membership organization and a Michigan resident who possesses a concealed pistol license. *See* Compl., R. 1, PageID#3. Plaintiffs

9

brought this suit under the Administrative Procedure Act (APA), 5 U.S.C. § 706, challenging ATF's March 2020 public safety advisory as arbitrary and capricious and in excess of ATF's statutory jurisdiction. *See* Compl., R. 1, PageID#15-17.[2]

The district court granted summary judgment in favor of the government. Looking to the "text" of § 922(t)(3), the district court explained that, for a state permit to serve as an alternative under § 922(t)(3), state officials must be "require[d]" by law "to 'verify' that the information available does not indicate that possession of a firearm by the permit holder would be unlawful," including under federal firearms prohibitions. Order, R. 25, PageID#560-561. Here, the Michigan State Police had "represent[ed]" to ATF that Michigan's "position [had] changed" with respect to the background check required for concealed pistol licenses, and Michigan officials had informed ATF that the Michigan State Police was no longer "making and entering final determinations" with respect to whether concealed pistol license applicants were prohibited from possessing a firearm under all federal firearm prohibitions. *See id.* at PageID#567-568 (quotation marks omitted). ATF's disqualification of Michigan's concealed pistol licenses under § 922(t)(3), the district court explained, was therefore "consistent with the text, design, and purpose of the Brady Act." *Id.* at PageID#560.

---

[2] Plaintiffs' complaint also alleged that ATF's actions were an "attempt" to establish "a national registry of firearms" and "collect information on more firearm buyers" in violation of law, Compl., R. 1, PageID#19-20, but plaintiffs abandoned that claim in district court. Plaintiffs additionally asserted that ATF's public safety advisory violated the notice and comment requirements of the APA, but the district court rejected that claim and plaintiffs do not raise the issue on appeal. *See* Br. 6 n.3.

The district court rejected plaintiffs' argument that, in determining what "the law of the State" of Michigan requires for purposes of interpreting and applying § 922(t)(3), ATF was limited to considering only the face of Michigan's statutory law, and could not consider how Michigan officials were interpreting state law. *See* Order, R. 25, PageID#559, 567. The district court explained that the "ordinary meaning of 'law'" "include[s] the practices and interpretations of state officials charged with executing or implementing a statute," and that ignoring state officials' interpretation of state law would lead to absurd results and would not serve the purpose of the Brady Act. *Id.* at PageID#561-562.

## SUMMARY OF ARGUMENT

Under the Brady Act, a state firearms permit can serve as an alternative to a background check through the federal system, but only if "the law of the State" requires state officials to "verif[y]" that available information "does not indicate that possession of a firearm by" the state permit applicant would violate federal law. 18 U.S.C. § 922(t)(3). In determining what "the law of the State" requires for purposes of administering this provision, *id.*, ATF has consistently deferred to states' interpretations of their own laws, rather than attempt to interpret state laws in the first instance. Here, Michigan officials informed ATF in 2019 that they do not interpret the state's background check requirement for concealed pistol licenses to require the Michigan State Police to make final determinations as to whether applicants are prohibited from possessing a firearm under 18 U.S.C. § 922(g)(9), which disqualifies

11

persons convicted for misdemeanor crimes of domestic violence. Based on the interpretation of Michigan law it was provided by Michigan officials, ATF therefore determined that "the law of the State" of Michigan no longer requires state officials to "verif[y]" whether possession of a firearm by concealed pistol license applicants "would be in violation" of federal law. *Id.* § 922(t)(3). The district court correctly recognized that that decision is "consistent with the text" of § 922(t)(3), and the Brady Act's purposes. *See* Order, R. 25, PageID#560.

Plaintiffs insist that, rather than look to the interpretation of Michigan law provided to ATF by the Michigan State Police, ATF and the district court should have concluded that Michigan concealed pistol licenses qualify under § 922(t)(3) based on the "text" of Michigan's state statute. Br. 19. But this Court has squarely recognized that it is "entirely appropriate" for ATF to "defer to" state officials' interpretation of state law in applying federal firearms provisions that depend on state law. *Morgan v. ATF*, 509 F.3d 273, 276 (6th Cir. 2007). The Michigan State Police is the Michigan authority responsible for conducting background checks for concealed pistol licenses, and it informed ATF that it does not interpret Michigan law to require it to make final determinations as to whether applicants are disqualified from possessing a firearm under all federal prohibitions. It would be extraordinary for ATF to reject that interpretation and to continue to recognize Michigan concealed pistol licenses as valid alternatives to a federal background check, on the theory that ATF or a court might interpret the "text" of Michigan's statute differently. Deferring to the Michigan State

12

Police's interpretation of the state law that it administers was the most appropriate means for ATF to "ascertain[] the meaning of" Michigan law "that does not involve requiring federal courts and agencies to second-guess state and local interpretations of state and local law." *Id.* at 276.

## STANDARD OF REVIEW

Where a district court has upheld an administrative agency's final decision on summary judgment, this Court reviews "the district court's summary judgment decision *de novo*, while reviewing the agency's decision under the" APA's standard of review. *Kentucky Waterways All. v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008). Under the APA, a court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## ARGUMENT

### ATF Correctly Determined That Michigan Concealed Pistol Licenses No Longer Qualify As Alternatives Under § 922(t)(3)

In order for a state firearms permit to serve as a valid alternative to a federal background check, "the law of the State" must require officials to "verif[y]" that available information "does not indicate that possession of a firearm by" the applicant would violate federal law. 18 U.S.C. § 922(t)(3)(A)(ii). As plaintiffs do not dispute, Michigan officials currently do not interpret the background check requirement for Michigan concealed pistol licenses to require the Michigan State Police to determine whether applicants are prohibited from possessing a firearm under all federal

13

prohibitions. Michigan concealed pistol licenses therefore do not qualify under

§ 922(t)(3), as ATF correctly determined. Plaintiffs insist that it was error for ATF to

disqualify Michigan concealed pistol licenses based on the Michigan State Police's

interpretation of Michigan law, and that ATF and the district court should have

instead concluded that those licenses qualify under § 922(t)(3) based on the "text" of

the state statute. Br. 19. But this Court has emphasized that it is "entirely

appropriate" for ATF to "defer to" state officials' interpretation of state law in

applying federal firearms provisions that depend on state law, *Morgan v. ATF*, 509

F.3d 273, 276 (6th Cir. 2007), and ATF reasonably did so here.

## A. ATF's Decision Comports with the Text of § 922(t)(3) and Traditional Principles of Federalism

1. Under the Brady Act, a state firearm permit can serve as a valid alternative

to a federal background check only if "the law of the State provides that" the permit

"is to be issued only after an authorized government official has verified that the

information available . . . does not indicate that possession of a firearm by" the

applicant "would be in violation of the law." 18 U.S.C. § 922(t)(3)(A)(ii).

Since the Brady Act's enactment, ATF has consistently interpreted this

provision in accordance with its plain terms and has recognized that a state permit can

serve as a valid alternative under § 922(t)(3) only if state law requires officials, before

issuing the permit, to research and analyze all available information (including

information that is available from the NICS databases) and determine whether the

14

permit applicant is prohibited from possessing a firearm under federal, state, or local law.  *See* 63 Fed. Reg. at 8381; 63 Fed. Reg. at 58,272; *see also* 27 C.F.R. § 478.102(c).  In other words, a state permit can serve as a valid alternative under § 922(t)(3) only if there is "parity between" the background check performed by state officials for the issuance of the state permit, and the background check that would otherwise be performed by the FBI under the federal background check system.  *See* AR, R. 16-2, PageID#257; *see also* 63 Fed. Reg. at 8381 ("If a State does not disqualify all individuals prohibited under Federal law, the permits issued by that State would not be accepted as alternatives.").

2.  In determining what "the law of the State" requires for purposes of § 922(t)(3), ATF has consistently deferred to states' interpretation of their own laws, rather than independently interpret state law in the first instance.  *See, e.g.*, AR, R. 16-2, PageID#252, 254 (instructing field offices at the time of the Brady Act's enactment to contact state officials to discuss state legal requirements); AR, R. 16-3, PageID#363 (reiterating in 2018 that "[f]ield counsel" are to analyze state permits by "correspond[ing] with the State entity" about the requirements of state law); *id.* at PageID#365 (describing 2004 ATF letter that asked "States to send a written response to ATF" about state-law requirements).

ATF's practice of deferring to state officials' interpretation of their own laws comports with "traditional federalism principle[s]."  *See Morgan*, 509 F.3d at 275.  For that reason, this Court has recognized that it is "entirely appropriate" for ATF to

"defer[] to [a locality's] interpretation of its own law[s]" in implementing federal firearms provisions that depend on the meaning of state and local laws. *See id.* at 276. In *Morgan*, this Court considered a federal firearms provision requiring federal firearms dealers to certify that their business "is not prohibited by State or local law." *Id.* at 274 (quoting 18 U.S.C. § 923(d)(1)(F)). In determining whether a dealer's business was "prohibited by State or local law," the Court held that it was "entirely appropriate" for ATF to defer to a "written opinion" that it had received from a locality's "legal counsel," which stated that the dealer's business was in violation of local zoning codes. *See id.* at 274-76 (quotation marks omitted). The Court rejected the dealer's argument that "ATF and the federal courts" were required to independently "construe and interpret" local law in determining whether the dealer's business was prohibited. *Id.* at 276. Rather, the Court explained, "deferring to [the locality's] interpretation of its own law" in that circumstance was "the most appropriate way" for ATF and the federal courts to ascertain the meaning of local law that did not "requir[e] federal courts and agencies to second-guess state and local interpretations of state and local law." *Id.*

3. Here, ATF followed the plain language of § 922(t)(3), as well as "traditional federalism principle[s]," *Morgan*, 509 F.3d at 275, in concluding in its March 2020 public safety advisory that Michigan concealed pistol licenses no longer qualify under § 922(t)(3) as valid alternatives to a federal background check.

ATF first recognized Michigan concealed pistol licenses as valid alternatives in 2006, after ATF received a letter from Michigan's then-Attorney General. *See* AR, R. 16-1, PageID#191; *id.* at PageID#143. ATF understood from that letter that Michigan interpreted its state law to require state officials to issue concealed pistol licenses only after they checked available databases (including the NICS databases), and made final determinations as to whether applicants were "prohibited under federal" law from possessing a firearm. *See id.* at PageID#143. Based on that understanding of Michigan law, ATF determined in 2006 that Michigan concealed pistol licenses qualify under § 922(t)(3). *See id.* at PageID#91.

ATF was informed in 2019, however, that "Michigan's position [had] changed." Order, R. 25, PageID#567. After a new Michigan Attorney General was elected, the Michigan State Police—the authority in Michigan responsible for conducting background checks for concealed pistol licenses—informed ATF that, pursuant to guidance from its legal counsel, it does not believe it is required to make final determinations as to whether applicants for concealed pistol licenses are disqualified from possessing a firearm under the federal prohibition for persons convicted of misdemeanor crimes of domestic violence. *See* AR, R. 16-1, PageID#105, 110-115, 145. The Michigan State Police informed ATF that they were therefore advancing applications for concealed pistol licenses for approval without conducting the necessary research or making final determinations as to whether

17

applicants had a disqualifying misdemeanor crime of domestic violence conviction. *See id.* at PageID#115, 123, 145.

Based on the interpretation of Michigan law provided by Michigan officials, ATF concluded in March 2020 that "the law of the State" of Michigan no longer requires State officials to "verif[y]" whether possession of a firearm by applicants for concealed pistol licenses "would be in violation of" federal law, 18 U.S.C. § 922(t)(3)(A)(ii). *See* AR, R. 16-1, PageID#188. That decision is "consistent with the text" of § 922(t)(3). *See* Order, R. 25, PageID#560. And it fulfills Congress's purpose in enacting the Brady Act: "to ensure that individuals not authorized to possess firearms are unable to purchase them." *Id.* (quoting *National Rifle Ass'n of Am. v. Reno*, 216 F.3d 122, 133 (D.C. Cir. 2000)). Federal law bars persons with a misdemeanor crime of domestic violence conviction from possessing a firearm, 18 U.S.C. § 922(g)(9), and Congress intended that the background check required by the Brady Act would identify these and other impediments to purchasing a firearm. *See id.* § 922(t)(1); H.R. Rep. No. 103-344, at 9, 1993 U.S.C.C.A.N. at 1986. Michigan law, as now interpreted by the Michigan State Police, does not require the research necessary to determine whether a permit applicant has committed a disqualifying offense, or final determinations as to whether a permit applicant has committed such an offense. Accordingly, if ATF were to continue to recognize Michigan concealed pistol licenses as alternatives under § 922(t)(3), then persons prohibited under federal law from possessing a firearm could potentially obtain a Michigan concealed pistol license, and

use that license to purchase a firearm without undergoing the type of background check mandated in order to prevent precisely such a sale. *See* Order, R. 25, PageID#560-561, 564-565.

Indeed, even if the statutory requirements were less clear, ATF's decision would be entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), as the district court recognized. *See* Order, R. 25, PageID#560. ATF is the agency with "expertise" in interpreting and applying federal firearms laws, and for the reasons set forth above, its decision to disqualify Michigan's concealed pistol licenses under § 922(t)(3) is "grounded . . . in the text of" that provision, fulfills the statute's purposes, and is consistent with ATF's longstanding interpretation and administration of the Brady Act as well as this Court's precedent. *See Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 479-80 (6th Cir. 2015).

## B.     Plaintiffs' Contrary Arguments Are Not Persuasive

Plaintiffs do not dispute that, in order to qualify as a valid alternative under § 922(t)(3), a state's law must require officials to review all available information and make determinations as to whether individuals are prohibited under federal law from possessing a firearm. *See* Br. 18. Nor do plaintiffs dispute that the Michigan State Police are not currently making final determinations as to whether applicants for concealed pistol licenses are disqualified from possessing a firearm under 18 U.S.C. § 922(g)(9), which disqualifies persons convicted of misdemeanor crimes of domestic violence. Instead, plaintiffs' principal argument on appeal is that, according to

19

plaintiffs, the "text" of Michigan law unambiguously requires state officials to make final determinations as to whether applicants are prohibited by federal law from possessing a firearm. *See* Br. 19. Accordingly, plaintiffs argue, ATF and the district court should have concluded that Michigan law satisfies § 922(t)(3), notwithstanding the interpretation provided to ATF by Michigan officials. That contention fails in all respects.

As an initial matter, as the district court recognized, "there is no indication that [p]laintiffs are authorized to speak on Michigan's behalf." Order, R. 25, PageID#566 n.23. The Michigan State Police is the Michigan authority responsible for conducting background checks for concealed pistol licenses, and it has informed ATF that, pursuant to guidance from its "legal counsel," it does not believe that it is required to conduct further research and make final determinations as to whether applicants for concealed pistol applicants are disqualified from possessing a firearm under the federal firearm prohibition for convictions for misdemeanor crimes of domestic violence, and that it is advancing applications for approval without making such determinations. *See, e.g.*, AR, R. 16-1, PageID#145.

As noted above, this Court has held that it is "entirely appropriate" for ATF to defer to state officials' interpretation of state law in interpreting and applying federal firearms provisions that depend on the meaning of state law, and neither ATF nor the federal courts are required to "independently" "construe and interpret" the meaning of state law "without regard" to state officials' own interpretations. *See Morgan*, 509

20

F.3d at 276. Consistent with "traditional federalism principle[s]," ATF appropriately deferred to the interpretation of state law provided to it by the Michigan State Police, rather than attempt to independently construe Michigan's statutes—particularly in a manner that would contradict the state officials responsible for administering that state statute. *See id.* at 275. ATF's duty is not to interpret Michigan law, but to administer the federal firearms statutes and ensure that federal firearms licensees transfer firearms only to individuals who have undergone a background check that is designed to identify statutory disqualifications, including disqualifications for convictions for misdemeanor crimes of domestic violence. *See* 18 U.S.C. § 922(t); *id.* § 922(d), (g). It would be extraordinary for ATF to disregard that statutory responsibility and continue to recognize Michigan concealed pistol licenses as valid alternatives notwithstanding Michigan's interpretation of its own law, on the theory that ATF or a court interpreting Michigan law might disagree with Michigan's current interpretation. *Contra* Br. 19.

That the Michigan State Police lacks "legislative authority" to enact laws in Michigan, *see* Br. 28, is irrelevant to whether ATF could properly disregard its interpretation of state law for purposes of applying § 922(t)(3). In *Morgan*, this Court held that ATF appropriately deferred to a "written opinion" from a locality's "legal counsel" in determining what local law required. *See* 509 F.3d at 274-75. Although the legal counsel's opinion was "not as authoritative as a state court ruling" about the meaning of local law, this Court nonetheless recognized that deferring to the legal

21

counsel's opinion was, in that circumstance, "the most appropriate way" for ATF to ascertain the meaning of local law that did not require "federal courts and agencies to second-guess state and local interpretations of state and local law." *Id.* at 276.

Here, as in *Morgan*, plaintiffs have not "offer[ed] a superior method of ascertaining the meaning of" Michigan law "that does not involve requiring federal courts and agencies to second-guess state and local interpretations of state and local law." *Morgan*, 509 F.3d at 276. Plaintiffs contend that the Michigan State Police's interpretation differs from that of two *prior* Michigan Attorney Generals, but there is nothing in the record to indicate that those prior Michigan Attorneys General set forth their interpretation in any formal opinion that is presently "binding" on the Michigan State Police, as plaintiffs suggest. Br. 25-26; *see, e.g.*, AR, R. 16-1, PageID#104-105 (explaining that the Michigan State Police in 2018 "received an informal opinion of the Michigan Attorney General recommending that the [State Police] make and enter determinations of federal firearms prohibitions," but Michigan then "experienced changes in law and state government").

Nor is there any indication in the record that the Michigan State Police's interpretation is contrary to that of the current Michigan Attorney General. To the contrary, the Michigan State Police informed ATF that they were acting pursuant to guidance from their "legal counsel," who had communicated with the newly elected Michigan Attorney General. *See, e.g.*, AR, R.16-1, PageID#113. And although ATF attempted to meet with the Michigan Attorney General's Office to discuss the matter

22

first hand, ATF was informed that the Michigan Attorney General's Office was not interested in meeting with ATF. *Id.* at PageID#145. "[U]nder the present circumstances, deferring to" the Michigan State Police "is the most appropriate" means for ATF, as a federal agency, to ascertain the meaning of Michigan law for purposes of interpreting and applying § 922(t)(3). *See Morgan*, 509 F.3d at 276. That is particularly so given that, as discussed, disregarding the Michigan State Police's interpretation would result in failing to effectuate the statutory requirements of the Brady and Gun Control Acts. *See supra* pp. 18-19.

Plaintiffs' assertion that the district court should have "offer[ed] a reason" for why Michigan would change its interpretation with respect to the background check required for concealed pistol licenses, but not licenses to purchase firearms, Br. 26-27, only underscores plaintiffs' misunderstanding. Neither ATF nor the district court were required to supply a "reason" for why Michigan would treat its two background check processes differently. Michigan officials informed ATF that Michigan had changed its interpretation of the background check required for concealed pistol licenses, but not the background check required for licenses to purchase, *see, e.g.*, AR, R. 16-1, PageID#105, 118, and ATF deferred to Michigan's interpretation in both instances: ATF disqualified Michigan concealed pistol licenses under § 922(t)(3), but it did not disqualify Michigan licenses to purchase. As the district court recognized, whether or not "Michigan's position is justifiable" as a matter of state law is irrelevant. Order, R. 25, PageID#566 n.23. The relevant question is whether ATF "made a

23

reasoned decision" in interpreting and applying *federal* law, and for the reasons already explained, ATF did. *See id.*

Plaintiffs' reliance (Br. 23-24) on this Court's unpublished opinion in *Puckett v. Lexington-Fayette Urban County Government*, 566 F. App'x 462, 466 (6th Cir. 2014), is misplaced. That case involved a dispute between private individuals and a local government as to whether "representations of local officials" could establish an enforceable "property interest" for purposes of the Fourteenth Amendment. *See id.* at 466, 468. This Court held "that representations and customs" of local officials "may not create a property right where they are contrary to an existing statute or regulation." *Id.* at 470. That holding has no bearing on this case, which involves whether ATF, as a federal agency, may appropriately defer to state officials' interpretation of what state law requires when interpreting and applying a federal statute that depends on the meaning of state law. This Court's opinion in *Morgan* makes clear that ATF can. *See Morgan*, 509 F.3d at 276.

Plaintiffs' remaining arguments are similarly wide of the mark. Plaintiffs assert (Br. 29) that the district court relied on the purpose of the Brady Act to "override" § 922(t)(3)'s text, but that is incorrect. As discussed above, the district court held that ATF's "interpretation of § 922(t)(3) is consistent with the text," and the court correctly rejected plaintiffs' argument that the statutory phrase "the law of the State" precludes ATF from considering the "interpretations of state officials charged with

24

executing or implementing" state law. Order, R. 25, PageID#560-561 (noting plaintiffs' interpretation is inconsistent with "the ordinary meaning of 'law'").

The district court looked to the "purpose and design of the Brady Act" only to confirm that ATF's interpretation was correct, and that plaintiffs' interpretation was "neither textually nor substantively sound." Order, R. 25, PageID#561-62. That was entirely appropriate. *See Abramski v. United States*, 573 U.S. 169, 179 (2014) (stating that courts "must (as usual) interpret [statutory] words not in a vacuum, but with reference to the statutory context, structure, history, and purpose" (quotation marks omitted)). Indeed, under plaintiffs' interpretation, ATF would presumably be required to independently interpret state statutes and qualify permits as valid alternatives if the "text" appears to ATF to satisfy § 922(t)(3), even if state officials have informed ATF that they do not interpret state law to require them to perform such a background check. *See* Br. 19. Nothing in the text of § 922(t)(3), its purposes, or traditional principles of federalism, support "such a helpless regime." *See* Order, R. 25, Page ID#562.

Finally, plaintiffs are incorrect that ATF exceeded its statutory authority in identifying in a letter to the Michigan Attorney General the "corrective measures" that Michigan must take for its concealed pistol licenses to again qualify as valid alternatives. *See* Br. 34 (quotation marks omitted). As an initial matter, ATF's letter to the Michigan Attorney General "is a separate document" from the March 2020 public safety advisory that plaintiffs challenge in their complaint, and plaintiffs did not

"mention the letter" until their "response and reply brief" on summary judgment. Order, R. 25, PageID#569. In any event, ATF did not exceed its statutory authority in merely identifying "corrective measures." As the district court explained, the first measure identified by ATF "is just a restatement of the statutory requirements under § 922(t)(3)." *Id.*; *see* AR, R. 16-1, PageID#183. The remaining measures "pertain to 'curing'" concealed pistol licenses that are issued during the period that Michigan does not interpret its state law to require the background check specified by § 922(t)(3), if Michigan wishes for ATF to qualify those "previously issued" licenses as valid alternatives in the future. Order, R. 25, PageID#569. Nothing obligates ATF to offer Michigan the opportunity to retroactively cure the problem with previously issued concealed pistol licenses, and nothing obligates Michigan to take the corrective actions identified. If anything, ATF's letter to the Michigan Attorney General only confirms the reasonableness of ATF's actions here, as it demonstrates that ATF has continued to endeavor to communicate with state officials as it administers § 922(t)(3). *See* AR, R. 16-1, PageID#183.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

MELISSA ANDERSON
*Associate Chief Counsel (Litigation)*
*Bureau of Alcohol, Tobacco, Firearms, &*
*    Explosives*
*99 New York Avenue NE*
*Washington, DC 20226*

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

SAIMA SHAFIQ MOHSIN
*Acting United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
/s/ Courtney L. Dixon
COURTNEY L. DIXON
*Attorneys, Appellate Staff*
*Civil Division, Room 7243*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*(202) 353-8189*

April 2021

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate

Procedure 32(a)(7)(B) because it contains 6,573 words.  This brief also complies with

the typeface and type-style requirements of Federal Rule of Appellate Procedure

32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-

point font, a proportionally spaced typeface.


*s/ Courtney L. Dixon*
Courtney L. Dixon

# CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

<em>s/ Courtney L. Dixon</em><br>
Courtney L. Dixon

# DESIGNATION OF RELEVANT
# DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government designates the

following district court documents as relevant:

| Record Entry | Description | Page ID # Range |
|---|---|---|
| ECF 1 | Complaint | 1-21 |
| ECF 16-1, 16-2, & 16-3 | Administrative Record | 88-402 |
| ECF 25 | District Court Order | 546-571 |

**ADDENDUM**

# TABLE OF CONTENTS

18 U.S.C. § 922(t) ...........................................................................................A1

## 18 U.S.C. § 922(t)

## § 922. Unlawful acts

**(t)(1)** Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, unless--

    **(A)** before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act;

    **(B)(i)** the system provides the licensee with a unique identification number; or

    **(ii)** 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection (g) or (n) of this section; and

    **(C)** the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee.

**(2)** If receipt of a firearm would not violate subsection (g) or (n) or State law, the system shall--

    **(A)** assign a unique identification number to the transfer;

    **(B)** provide the licensee with the number; and

    **(C)** destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.

**(3)** Paragraph (1) shall not apply to a firearm transfer between a licensee and another person if--

    **(A)(i)** such other person has presented to the licensee a permit that--

        **(I)** allows such other person to possess or acquire a firearm; and

        **(II)** was issued not more than 5 years earlier by the State in which the transfer is to take place; and

    **(ii)** the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law;

\* \* \*