No. 21-1131

# In the United States Court of Appeals for the Sixth Circuit

DONALD J. ROBERTS, II, AND GUN OWNERS OF AMERICA, INC.,
Plaintiffs-Appellants,

v.

U.S. JUSTICE DEPARTMENT, BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, AND REGINA LOMBARDO, in her official capacity as Acting Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives,
Defendants-Appellees.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

## SUPPLEMENTAL BRIEF FOR APPELLANTS

KERRY L. MORGAN
  PENTIUK, COUVREUR & KOBILJAK, P.C.
  2915 Biddle Avenue, Suite 200
  Wyandotte, Michigan 48192
  (734) 281-7100

ROBERT J. OLSON*
WILLIAM J. OLSON
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, Virginia 22180-5615
  (703) 356-5070
Counsel for Appellants
*Attorney of Record

September 15, 2021

## TABLE OF CONTENTS

                                                                                                           Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. iii

Standard of Review…………………………………………………………...1

Argument……………………………………………………………………...2

Conclusion…………………………………………………………………... 7

Certificate of Compliance……………………………………………....…..9

Certificate of Service……………………………………………………...10

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Legion v. Am. Humanist Ass'n*,
    139 S. Ct. 2067, 2103 (2019)……………………………………………..4

*Association of Data Processing Serv. Orgs., Inc. v. Camp*,
    397 U.S. 150, 153 (1970)……………………………………………….5

*Courtney v. Smith*,
    297 F.3d 455, 460-461 (6th Cir. 2002)    ………………………….....5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167, 181 (2000)……………….........................................…….1

*Lee v. DOJ*,
    5:20-cv-00632 (N.D. Al.)…......…………………………………...…..2, 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-61 (1992)…………………………….....………….1

*T.H.E. Ins. Co. v. Naghtin*,
    916 F.2d 1082, 1084 (6th Cir. 1990)…………………………….….........1

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190, 2205 (2021)…………………………………………..4

**STATUTES**

18 U.S.C. Sec. 922(t)(3)………………………………...…….........2, 4, 5, 6

**STANDARD OF REVIEW**

The district court below did not explicitly address the standing issue, but obviously concluded implicitly Plaintiffs had standing. *See* Order Denying Plaintiffs' Motion for Summary Judgment, R.25, PageID# 557 ("Op.") at 12 (recounting undisputed facts). Still, "[s]tanding is a threshold inquiry which [this Court] must consider prior to reaching the merits of an appeal." *T.H.E. Ins. Co. v. Naghtin*, 916 F.2d 1082, 1084 (6th Cir. 1990). There is an "irreducible constitutional minimum of standing contain[ing] three elements:"

> (1) "the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not conjectural or hypothetical,'" (2) that injury must be "trace[able] to the challenged action of the defendant, and not ... the result of the independent action of some third party," and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).[1]]

---

[1] A nonprofit organization like GOA can establish representational standing to sue when "[i] its members would otherwise have standing to sue in their own right, [ii] the interests at stake are germane to the organization's purpose, and [iii] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Clearly, the constitutional rights and statutory interests sought to be protected in this case (the ability to acquire firearms) are pertinent to (indeed, they are at the core of) the GOA's mission, which exists "to preserve, protect, and defend the Second Amendment rights of gun owners." Complaint for Declaratory and Injunctive Relief, R.1, PageID#2 ("Compl.") ¶ 4.

1

**ARGUMENT**

The government did not challenge Plaintiffs' standing (either below or in this Court).[2] However, *Lee v. DOJ*, 5:20-cv-00632 (N.D. Al.), a case recently decided by the U.S. District Court for the Northern District of Alabama, involves one of the same plaintiffs as here, and challenges a similar government action — ATF's July 22, 2019 "Public Safety Advisory" issued to Alabama FFLs, purporting to revoke the 18 U.S.C. Section 922(t)(3) exemption for Alabama concealed carry permits. Unlike here, in *Lee* the government contested the plaintiffs' standing, raising a number of theories as to why they could not challenge the Alabama PSA. In its order dismissing the case without prejudice, the *Lee* court agreed that the plaintiffs did not have Article III standing, but rejected many of the government's more creative arguments as to why.[3] Ultimately, the *Lee* court reached a narrow conclusion on a single issue that,

---

Likewise, since the injuries suffered by GOA's members (the inability to use a valid Michigan permit to obtain a firearm in lieu of a NICS check as Congress provided) are virtually identical across gun owners, the individual participation of each such person is not required here, as GOA will fully represent their interests.

[2] The *Lujan* "redressability" prong is clearly met here because, if the Court strikes down the challenged PSA, declaring that "the law of the State" of Michigan qualifies under Section 922(t)(3), then Plaintiffs again would be able to use their Michigan CHPs in lieu of a NICS check — all the relief they seek.

[3] For example, the government claimed the *Lee* plaintiffs' injury was not "traceable to any action by ATF" because "acceptance of a valid alternate permit is entirely discretionary on the part of an FFL," and it is plausible a FFL "would [] exercise[] its independent judgment to run a NICS background check even absent the

while the individual plaintiff may have suffered a harm, it did not constitute an "injury-in-fact" sufficient to confer standing,[4] because the plaintiff had not been entirely "precluded [or] denied ... from purchasing a firearm," but merely "was refused the ability to purchase a firearm *the way she wanted.*" *Lee* Order at 11 (emphasis added). The court concluded that having to "fill[] out the ATF 4473 Form and wait[] a few minutes for her information to clear," is "'a brief, inconsequential

---

2019 PSA." *Lee v. DOJ*, Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("*Lee* Opp.") #26 at 15-16. The *Lee* court rejected that argument, concluding that "[o]n standing, the Court is satisfied that the PSA rescinded the §922(t)(3) exemption ... and requires [Lee] to submit to an [sic] NICS background check." *Lee* Order, #37 at 10. Likewise here, Plaintiff Roberts, along with thousands of GOA's Michigan members, in the past have been able to use CHPs in lieu of a NICS check (as Congress intended) but, now, as a direct "but-for" consequence of ATF's Michigan PSA, no longer are able to do so. That injury to Plaintiffs is thus the direct and "traceable" consequence of the challenged ATF action.

    The *Lee* court was similarly unimpressed by the government's argument that the individual plaintiff "may not establish Article III injury by merely refusing to [undergo] a NICS check ... and then alleging she cannot obtain a firearm," noting a plaintiff "'cannot manufacture standing merely by inflicting harm on themselves.'" *Lee* Op. at 15. Rejecting that argument, the Alabama court explained "the Court isn't holding that Lee lacks standing because she injured herself – that her refusal to fill out an ATF Form 4473 precludes her from bringing these claims." *Lee* Order at 12.

    Relatedly, the *Lee* court rejected the government's claim that the only injury the plaintiff "alleges is an inability to acquire a firearm" (*Lee* Reply Brief in Support of Defendants' Cross-Motion for Summary Judgment, #35 at 2-3), noting the harm claimed by the plaintiff was "two-fold: (1) being refused a firearm; *and (2) the requirement to undergo an* [sic] *NICS background check.*" *Lee* Order at 11.

[4] Plaintiffs' injury is both "actual" (having already occurred) and "imminent" (certain to occur again), as those with qualifying Michigan permits have been and continue to be unlawfully subjected to NICS background checks.

3

annoyance,'" insufficient to establish legal standing. *Lee* Order at 11. This conclusion by the *Lee* court was erroneous for several reasons.

First and most importantly, the *Lee* holding permits ATF to nullify the benefit of the statute Congress enacted. *See Lee* Plaintiffs' Combined Opposition to Defendants' Cross-Motion and Reply in Support of Plaintiffs' Motion for Summary Judgment ("*Lee* Combined Op.") #29 at 8. Congress found it important enough to create an explicit exemption in Section 922(t)(3) for certain state permit holders, establishing a statutory right to obtain firearms without a NICS check.[5] Yet the *Lee* court refused to permit enforcement of that interest through litigation.[6] But a court

---

[5] To be sure, "Congress's creation of a statutory prohibition or obligation ... does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm...." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). But the fact that a harm is perceived by a court to be "brief" does not mean it is not concrete. Plaintiffs here are not "merely seeking to ensure a defendant's 'compliance with regulatory law'" in the abstract. *TransUnion* at 2206. Nor do they — as the Lee court characterized it — seek merely to purchase a firearm "the way [they] want[]," but rather to vindicate their statutory interest to purchase a firearm *the way Congress provided*. Had a Wisconsin resident or a Michigan resident *without* a qualifying permit sought to challenge the 2020 Michigan PSA, they might lack standing. But Plaintiffs possess qualifying permits, and seek to use those permits as provided by law. ATF's denial of their ability to do so presents "a real controversy with real impact on real persons." *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019) (Gorsuch, J., concurring). For the same reason, Plaintiffs' injury is "particularized," affecting a class of Michigan gun owners with qualifying permits.

[6] Strangely, the *Lee* court claimed that "Lee isn't an object of the 2019 PSA." *Lee* Order at 10 (citing *Lujan* at 562). But like in Alabama, ATF's 2020 Michigan PSA at issue here *instructs FFLs to deny Plaintiffs their statutory interests* under

4

is not free to discount a statutory benefit that Congress has created, opining that it is insignificant, when the denial of that benefit has harmed law-abiding permit holders in concrete and particularized ways.

Second, under the *Lee* court's holding, if Plaintiffs do not have standing to challenge ATF's action depriving gun owners of their interests under Section 922(t)(3), *then no one would have standing*. *See Lee* Combined Opp. at 7. Indeed, all persons with qualifying Michigan permits now must submit to additional requirements from which federal law specifically exempts them. If Roberts and GOA[7] cannot challenge ATF, then neither can anyone else. To deny Plaintiffs' standing would mean that ATF — an agency charged only with *enforcing* the law —

---

Section 922(t)(3). Just because the PSA orders third parties to help the government injure Plaintiffs does not mean Plaintiffs are not the "the object of" the PSA. Likewise, Plaintiffs are certainly "the object of" Section 922(t)(3), which provides that "such other person [who] has presented to the licensee a [qualifying] permit" may purchase a firearm without a NICS check. Thus, Plaintiffs are "within the zone of interests to be protected ... by the statute ... in question." *See Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). *See also Courtney v. Smith*, 297 F.3d 455, 460-461 (6th Cir. 2002) ("A plaintiff seeking judicial review of agency action under the APA [] must not only meet the constitutional requirements of standing, but must also demonstrate prudential standing," which exists "if the interest that the plaintiff seeks to protect is 'arguably within the zone of interests to be protected or regulated by the statute ... in question.'").

[7] The *Lee* court was "satisfied" GOA had representational standing to "enforce the rights of its members," but concluded they do not "otherwise have standing to sue individually...." *Lee* Order at 13. The government agreed. (*Lee* Opp. at 16-17).

could wholesale repeal Section 922(t)(3) by issuing letters revoking eligibility *of all permits in every state* — and, under *Lee,* would be completely insulated from judicial review, because the only resulting harm would be an unlawful background check.

What's more, if having to undergo a background check before obtaining a firearm cannot suffice to confer Article III standing, then *Lee* would authorize all manner of statutory overreach by ATF to expand NICS background checks. For example, if ATF demanded that *all firearm transfers* (including ones not governed by federal law) must undergo a NICS background check, that obviously would be an unprecedented expansion of the Gun Control Act, but would merely result in "a mandatory NICS background check" which, according to *Lee*, is only "'a brief, inconsequential annoyance,'" and thus ATF could not be challenged.

Finally, in concluding the *Lee* plaintiffs did not have standing, the Alabama court relied on the unpublished opinion in *Robinson v. Sessions*, 721 Fed. Appx. 20 (2d. Cir. 2018), to establish that "a mandatory NICS background check" is not "an imminent injury-in-fact." *Lee* Order at 12. But *Robinson* did not involve a challenge to the NICS background check, but rather to alleged constitutional violations when NICS "cross-reference[s] personal information with the Terrorist Screening Database ("TSDB")." *Robinson* at 21. The *Robinson* plaintiffs did not object to the NICS

check itself, but merely to the TSDB database queried as part of that check. The Second Circuit rejected their claim, noting the plaintiffs "do not claim to be listed in the TSDB" and "fail to identify how the Government's search procedure causes them injury," and thus "fail to identify a direct injury in fact that they have sustained or will sustain as a result of ... the inclusion of TSDB data in" NICS. *Id.* at 23. Plaintiffs have been unable to find any federal court opinion ruling on a challenge to the NICS background check, and *Robinson* certainly was not it. *See Lee* Combined Opp. at 7 n.9 (listing *state* cases where standing was explicitly found or implicitly assumed).

## CONCLUSION

By statute, Congress required various transactions in Second Amendment "arms" occur only after a NICS background check, but exempted from that infringement those who — like Plaintiffs — hold a qualifying state permit. Then, in March of 2020, Defendant ATF issued a letter, unlawfully purporting to revoke the exemption that Congress created with respect to certain Michigan permits. This action directly and concretely harms the Plaintiffs, denying them a statutory benefit that Congress provided, and requiring them to undergo an unnecessary background check as a precondition to exercising an enumerated constitutional right. For the reasons above, this Court should find Plaintiffs have standing to bring this action.

Respectfully submitted,

/s/ Robert J. Olson

| | |
|---|---|
| KERRY L. MORGAN<br>  PENTIUK, COUVREUR & KOBILJAK, P.C.<br>  2915 Biddle Avenue, Suite 200<br>  Wyandotte, Michigan  48192<br>  (734) 281-7100 | ROBERT J. OLSON*<br>WILLIAM J. OLSON<br>JEREMIAH L. MORGAN<br>  WILLIAM J. OLSON, P.C.<br>  370 Maple Avenue W., Suite 4<br>  Vienna, Virginia  22180-5615<br>  (703) 356-5070<br>Counsel for Appellants<br>*Attorney of Record |

# CERTIFICATE OF COMPLIANCE

IT IS HEREBY CERTIFIED:

1.  That the foregoing Supplemental Reply Brief of Appellants complies with the Court's September 8, 2021 brief ordering the filing of supplemental briefs in this matter, as it is no more than seven pages in length, excluding the parts of the brief exempted by Rule 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 18.0.0.200 in 14-point Times New Roman.

    /s/ Robert J. Olson
Robert J. Olson
Counsel for Appellants

Dated: September 15, 2021

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Supplemental Reply Brief for Appellants was made, this 15th day of September 2021, by the Court's Case Management/Electronic Case Files system upon all parties or their counsel of record.

    /s/ Robert J. Olson

Robert J. Olson

Counsel for Appellants